UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                         )<br>          Plaintiff,                              )<br>                                                         )<br> V.                                                    )<br>                                                         )<br> MICKY RIFE,                                 )<br>                                                         )<br>          Defendant.                        )  | Criminal No. 3:19-cr-00010-GFVT-MAS<br><br>**OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Micky Rife moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b), to dismiss the indictment pending against him. [R. 27.] Mr. Rife was indicted on two counts of engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c). [R. 1.] Mr. Rife argues the particular subsection he is charged under is an unconstitutional exercise of Congressional authority as applied to him. For the reasons that follow, Mr. Rife's Motion to Dismiss the Indictment [R. 27] is **DENIED**.

**I**

**A**

In January 2019, Defendant Micky Rife was charged by criminal complaint of one count of engaging in illicit sexual conduct in a foreign place, specifically Cambodia, in violation of 18 U.S.C. § 2423(c). [R. 1.] Mr. Rife was arrested later that month. [R. 9.] On February 7, 2019, a grand jury returned an indictment against him in open court. [R. 12.] The indictment charges Mr. Rife with two counts of engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c). [R. 12.]

Mr. Rife is a United States citizen who, in September 2012, traveled to Cambodia and obtained a job teaching English to Cambodian children. Allegations of misconduct with students began as early as 2013 and lasted until his termination from the Cambodian school in December 2018. The counts in the indictment are based on allegations made by two former minor students at the school. The victims represented that Mr. Rife touched them inappropriately underneath their clothing while ostensibly playing with or carrying them. Mr. Rife returned to the United States, where he was arrested, in December 2018 following his termination at the Cambodian school. The government believes the conduct at issue occurred between 2014 and 2016.

The government does not allege that Mr. Rife offered either the children or their parents, or some other third party, any form of payment or remuneration in connection with the abuse of these students. Therefore, the "illicit sexual conduct" at issue here is that defined by § 2423(f)(1), *i.e.*, non-commercial in nature.

**B**

In July 2000, President Clinton signed the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography (hereinafter "Optional Protocol"). Letter of Submittal from President Clinton to the Department of State, S. Treaty Doc. No. 106-37, 2000 WL 33366017, at *1 (July 5, 2000). It was ratified by the Senate in June 2002. *See* 148 Cong. Rec. S5717-01 (daily ed. June 18, 2002). Its aim was to curb certain sex offenses "domestically and transnationally," related to "crimes of trafficking in children," namely the sale of children, child prostitution, and child pornography. Letter of Transmittal from President Clinton to the United States Senate, S. Treaty Doc. No. 106-37 (July 5, 2000). To that end, the Optional Protocol requires each signatory nation to ensure that certain sexual offenses against children are "fully covered under its criminal or penal law, whether

theses offences are committed domestically or transnationally[.]" S. Treaty Doc. No. 106-37, art. 3. Cambodia is likewise a signatory to the Optional Protocol. *See* Status of Ratification of the Optional Protocol, http://indicators. Ohchr.org/.

In 2003, on the heels of the Optional Protocol, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today ("PROTECT") Act. Pub. L. 108-21, 117 Stat. 650 (2003). Originally introduced as part of the Sex Tourism Prohibition Improvement Act of 2002, the purpose of PROTECT was to "make it a crime for a U.S. citizen to travel to another country and engage in illicit sexual conduct with minors." H.R. Rep. No. 107-525 (2002); Gregory Van Houten, Note, *Testing Congress's Foreign Commerce and Treaty Powers: A New, (Un)Constitutional Tool for Combating American Child Sex Tourists?*, 53 Am. Crim. L. Rev. 177, 188 (2016). Prior to PROTECT, it was already a criminal offense to travel in foreign commerce with the intent to engage in illicit sexual conduct with a minor. *See* 18 U.S.C. § 2423(b) (2000). However, enforcement proved difficult as prosecutors struggled to establish that the intent to engage in illicit sexual conduct existed prior to travel in foreign commerce. *See* PROTECT Act, Pub. L. No. 108-21, Title I, § 105(a), 117 Stat. 650, 652 (2003); *see also* H.R. Rep. No. 107-525 (2002). Thus, with the passage of the PROTECT Act, intent was no longer an element of the offense.

Changes to § 2423 came again in 2013 when Congress incorporated a residency clause into subsection (c) as part of the Violence Against Women Reauthorization Act. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, Title XII, § 1211(b), 127 Stat. 54, 142 (2013). Today, § 2423(c) prohibits "travel[ing] in foreign commerce or resid[ing], either temporarily or permanently, in a foreign country, and engag[ing] in any illicit sexual conduct with another person." 18 U.S.C. 2423(c). "Illicit sexual conduct" is further defined as "(1) a

sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the . . . jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age." 18 U.S.C. 2423(f)(1)-(2). Thus, § 2423(c) criminalizes both commercial and non-commercial sex acts with minors in foreign territories.

Defendant Micky Rife is charged under this latest iteration of 18 U.S.C. § 2423(c) with committing an illicit, non-commercial sex act with a minor while either traveling in foreign commerce or residing in a foreign country. [R. 1.] Mr. Rife believes the statute under which he is charged is an "unconstitutional exercise of Congressional authority" as applied to him, and argues that this Court should dismiss the indictment. [R. 27-1 at 2.]

## II

A Defendant may challenge a defect in the indictment, including its constitutionality, via a pretrial motion to dismiss, provided "the basis of the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(B). A defendant may challenge the constitutionality of a statute facially or as applied. A statute is facially unconstitutional if it is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

In contrast, an as-applied challenge alleges that the statute in question is unconstitutional as applied to the defendant's alleged conduct. *Carroll v. City of Cleveland*, 522 Fed. App'x 299, 306 (6th Cir. 2013). When ruling on a motion to dismiss an indictment, the Court accepts the factual allegations therein as true, and determines only whether the indictment is valid on its face. *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). With these standards in mind, the Court finds that Mr. Rife's motion to dismiss the indictment must be DENIED.

**A**

Mr. Rife is not the first to question the constitutionality of the non-commercial prong of § 2423(c). Following both its enactment in 2003 and its amendment in 2013, § 2423(c) has made several appearances in the case law. To date, no circuit court has struck down the provision, but no two circuits have followed quite the same line of reasoning in upholding it, either. Circuit Courts analyzing § 2423 typically uphold it pursuant to Congress's Foreign Commerce Clause powers, Congress's treaty power, or both. *See United States v. Park*, 938 F.3d 354 (D.C. Cir. 2019) (finding criminalization of commercial and non-commercial sex acts with minors under § 2423(c) is necessary and proper for the implementation of the Optional Protocol); *United States v. Lindsay*, 931 F.3d 852 (9th Cir. 2019) (finding § 2423(c) did not exceed Congress's authority under the Foreign Commerce Clause as applied to non-commercial sexual abuse of a minor); *United States v. Al-Maliki*, 787 F.3d 784 (6th Cir. 2015) (upholding conviction under non-commercial prong of § 2423(c) under plain error review); *United States v. Pendleton*, 658 F.3d 299, 311 (3rd Cir. 2011) (holding § 2423(c) is a valid exercise of Congress's power to regulate "channels of foreign commerce" under the Foreign Commerce Clause). Mr. Rife argues that neither provides Congress the authority to criminalize conduct like that at issue here. [R. 27; R. 36.]

**1**

Article II gives the President the "Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." U.S. Const. art. II, § 2, cl. 2. The Necessary and Proper Clause grants Congress power to enact legislation that would implement such a treaty. U.S. Const. Art. II, § 8 cl. 18. This is commonly referred to as Congress's "treaty power". *Park*, 938 F.3d at 365. This power is broad, and therefore "the word

'necessary' does not mean 'absolutely necessary.'" *United States v. Comstock*, 560 U.S. 126, 134 (2010). Instead, "necessary" means "convenient or useful" or "conducive to the authority's beneficial exercise." *Id.* (internal citations omitted). Thus, in examining the constitutionality of a particular statute under the Necessary and Proper Clause, the Court asks "whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.*

The Sixth Circuit has not yet addressed whether the treaty power provides a constitutional basis for § 2423(c). Therefore, the Court turns to persuasive authority from other circuits. The Court finds the D.C. Circuit's opinion in *United States v. Park*, reversing the district court's order dismissing the indictment, particularly compelling. 938 F.3d 354 (D.C. Cir. 2019). Like Mr. Rife, Mr. Park was an English language teacher for Vietnamese students. Mr. Park allegedly used his status as a teacher to gain access to his minor victims. *Park*, 938 F.3d at 357. Mr. Park was indicted under § 2423(c) for sexually abusing a child while residing in Vietnam. *Id.* Like Cambodia, Vietnam is a signatory to the Optional Protocol. *Id.* The panel found that § 2423(c) was rationally related to implementation of the Optional Protocol because "the Optional Protocol's goal of eliminating commercial child sexual exploitation . . . could be undercut if Congress failed to criminalize non-commercial child sex abuse by U.S. residents abroad." *Park*, 938 F.3d at 368. It cited three reasons.

First, if the United States cannot criminalize non-commercial sexual abuse of minors by U.S. residents in foreign countries, then such a "'loophole in the law' could encourage American sex tourists . . . to go abroad seeking *non*-commercial sex with minors that, had it occurred in the United States, would be criminalized as statutory rape." *Park*, 938 F.3d at 368. Should this

practice become widespread,[1] it could "have broad ramifications on our standing in the world, potentially disrupting diplomatic and even commercial relationships." *United States v. Bollinger*, 798 F.3d 201, 219 (4th Cir. 2015). The *Park* court found that "[t]he 'Constitution does not envision or condone' such 'a vacuum' of power in which 'citizens may commit acts abroad that would clearly be crimes if committed at home.'" *Park*, 938 F.3d at 368 (quoting *United States v. Bollinger*, 798 F.3d at 219. Therefore, this law is valid under the treaty power as part of a larger regulatory framework geared toward eliminating the sexual abuse of minors, both domestically and abroad. *See Bollinger*, 798 F.3d at 219.

Second, because the United States is so effective, comparatively, at enforcing its criminal laws against child sexual abuse within its borders, and monitoring the convicted thereafter, the United States has inadvertently incentivized convicted sex offenders to relocate to foreign countries. *Id.* at 361. The Sex Offender Registration and Notification Act (SORNA) makes it illegal for a convicted sex offender to fail to properly register as such when moving from state to state. 18 U.S.C. § 2250(a)(1)–(2); *United States v. Pendleton*, 658 F.3d 299, 309 (3rd Cir. 2011). But until 2016, there was no registration requirement for sex offenders who left the United States and traveled to a foreign country. *Park*, 938 F.3d at 368. The *Park* court found that "[w]hen domestic legislation creates or exacerbates identified risks to treaty partners—*e.g.* when domestic counter-recidivism measures like SORNA lead U.S. Citizen sex offenders to move overseas and commit the very same crimes the Protocol aims to eliminate—Congress's treaty power authorizes it to address that danger." *Id.* at 369.

Third and finally, the court found that "Congress rationally could have concluded that the

---

[1] In truth, this practice may already be widespread. Countries known to have lax or inadequate enforcement of child abuse laws often blame the United States for their problem, "arguing that many of the sex tourists are American." *Park*, 938 F.3d at 360; H.R. Rep. No. 107-525 at 3. *See also* Najat Maalla M'jid, *Report of the Special Rapporteur on the Sale of Children, Child Prostitution and Child Pornography*, U.N. Doc. A/HRC/22/54, at 9 (Dec. 24, 2012).

7

Optional Protocol's goal of eliminating global sex tourism involving minors would be undermined unless putatively non-commercial sex with minors were also criminalized." *Id.* This is because often "the *quid-pro-quo* in child prostitution is typically more indirect or hidden than for prostitution involving adults." *Id.* The Optional Protocol is not simply concerned with money exchanging hands, but also "inchoate favors, valuable experiences, promised future benefits, meals, or other gifts—all of which might be difficult to establish as 'consideration in support of a child prostitution charge[.]" *Id.*

Much of the same logic applies here. Although, to the Court's knowledge, Mr. Rife is not subject to the requirements of SORNA, the D.C. Circuit's first and third points remain applicable. The Court agrees that criminalization of non-commercial sexual abuse of minors, such as the charges levied against Mr. Rife, is necessary to "address loopholes in the international regulatory scheme" surrounding such conduct. It is also rational to conclude that effectuation of the Optional Protocol could be hampered if Congress couldn't police non-commercial-sexual abuse where the abuser offered only "inchoate favors, valuable experiences, promised future benefits, meals, or other gifts" as opposed to more traditional forms of consideration. This Court agrees with the D.C. Circuit that Congress acted within its authority under the Necessary and Proper Clause in passing §2423(c). Consequently, Mr. Rife's Motion to Dismiss the Indictment [R. 27] is DENIED.

**2**

Having found § 2423(c) a constitutional exercise of Congress's authority under the Necessary and Proper Clause, it is not necessary to analyze constitutionality under the Foreign Commerce Clause. Nevertheless, the Court will address the topic briefly in light of relevant dicta in the Sixth Circuit.

In *United States v. Al-Maliki*, the Sixth Circuit considered whether Congress had authority to enact § 2423(c) under the Foreign Commerce Clause. 787 F.3d 784 (2015). Al-Maliki was convicted by a jury of sexually abusing his two minor sons in Syria, where they lived with their mother, in violation of § 2423(c). *Id.* at 790. He argued for the first time on appeal that § 2423 was unconstitutional because it exceeded Congress's authority under the Foreign Commerce Clause. *Id.* Because Al-Maliki did not bring his constitutional argument before the lower court, the Sixth Circuit reviewed his claim under a plain error standard. *Id.* at 791. And although it ultimately upheld Al-Maliki's conviction, concluding that any error was not plain, the Sixth Circuit clearly signaled that it did not think the Foreign Commerce Clause gave Congress authority to enact § 2423(c). *Id.* ("Does [authority to "regulate Commerce with foreign Nations"] include the power to punish a citizen's noncommercial conduct while the citizen resides in a foreign nation? We doubt it.").

Applying the familiar *Lopez*-framework, borrowed from an Interstate Commerce Clause analysis, the *Al-Maliki* court concluded § 2423(c) failed to regulate (1) channels of commerce, (2) instrumentalities of or persons or things in commerce, or (3) an activity that substantially affected commerce. *Id.* at 792–94. Because "the government need only prove that a citizen *at one point* 'travel[ed] in foreign commerce—with no intent whatsoever'" before committing the regulated act, the Sixth Circuit reasoned that it could not be said that Congress was regulating channels of commerce or persons or things in commerce. Likewise, the Sixth Circuit found the third *Lopez* prong is inadequate to support § 2423(c), based on its conclusion that "Congress 'may not regulate noneconomic activity, such as sex crimes, based on the effect it might have on . . . commerce.'" *Id.* at 792 (quoting *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013) (Thomas, J., dissenting)).

9

Although it upheld § 2423(c) pursuant to Congress's power under the treaty power, the D.C. Circuit also addressed Park's argument that § 2423(c) was not authorized by the Foreign Commerce Clause. *Park*, 938 F.3d at 370. Ultimately, the *Park* court reached a different conclusion. While it acknowledged the call was a close one, the D.C. Circuit agreed with the Ninth Circuit that "non-commercial sexual abuse of minors can drive commercial demand for sex with minors by reinforcing the idea that such conduct is acceptable, or by allowing traffickers to use non-commercial arrangements to entice patrons into engaging in subsequent commercial behavior." *Id.* at 373; *United States v. Lindsay*, 931 F.3d 852, 863 (9th Cir. 2019). Additionally, it found that "[c]riminalizing non-commercial sexual abuse is also conducive to eliminating commercial child exploitation 'given the enforcement difficulties' posed by a requirement to prove a *quid-pro-quo* transaction." *Park*, 938 at 373 (citing *Gonzales v. Raich*, 545 U.S. 1, 22 (2005)). And while "child sexual abuse may not be 'quintessentially economic' in every case[,]" the *Park* court reasoned that Park's actions, specifically, that he "worked as an English language teacher" and "used the prospect of English lessons to invite the child to his apartment" amounted to the type of "tacit and informal exchange" that is difficult to snuff out if only commercial sex abuse is criminalized.

Ultimately, this Court declines to weigh in. The Necessary and Proper Clause provides ample authority for upholding § 2423(c), and so the Court need not reach the issue of constitutionality under the Foreign Commerce Clause. And while in *Al-Maliki* the Sixth Circuit clearly signaled that it did not *think* § 2423(c) was a valid exercise of congressional authority under the Foreign Commerce Clause, those thoughts did not create precedent. Because the panel was conducting plain error review, there is no binding authority in the Sixth Circuit addressing the constitutionality of § 2423(c).

## III

Nelson Mandela said "[t]here can be no keener revelation of a society's soul than the way in which it treats its children." But the Court's decision is not an emotional one. Congress acted within its authority pursuant to the treaty power in enacting § 2423(c). Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Micky Rife's Motion to Dismiss the Indictment **[R. 27]** is **DENIED**.

This the 20th day of December, 2019.

Gregory F. Van Tatenhove
United States District Judge